## SHANNON et ux. v. TARRANT COUNTY et al.

### No. 13575.

Court of Civil Appeals of Texas. Fort Worth.

Oct. 23, 1936.

Concurring Opinion Dec. 11, 1936.

Rehearing Denied Dec. 11, 1936.

M. Hendricks, Brown, Marvin H. Brown, Jr., and Marvin B. Shannon, all of Fort Worth, for appellants.

Samuels, Foster, Brown & McGee, of Fort Worth, for appellees.

SPEER, Justice.

This controversy grows out of an application to this court for a temporary restraining order by S. D. Shannon and wife, Marie Shannon, whom, for convenience, we shall refer to as appellants, against Tarrant County, Texas, Emmett Moore, as County Judge and Chairman of the Commissioners' Court of Tarrant County, Texas, and Bill Merritt, Frank Estill, Earl Mitchell and Joe Thannisch, as County Commissioners of Tarrant County, Texas, and, for convenience, will be herein referred to as appellees.

The grounds upon which appellants sought the restraining order were alleged to be, substantially, as follows: That appellants were the owners of a tract of 9.85 acres of land in Tarrant County, Texas, described in the petition and unnecessary to be repeated here; that on August 24, 1936, they filed their petition in the 96th District Court of Tarrant County, Texas, for a temporary restraining order to prevent appellees entering their property and going forward with the construction of a road thereon which was alleged to be threatened by appellees under a purported condemnation proceeding.

A copy of appellants' petition for injunctive relief before the 96th District Court of Tarrant County is attached to their petition before this court and from it we find the alleged grounds for injunction in the lower court were: That appellees had attempted to condemn the property of appellants for the purpose of constructing a proposed road and that the acts of appellees in the purported condemnation proceedings were not in accordance with the law applicable to such cases and that they had not in any manner met the conditions provided by law to entitle them to take possession of appellants' property as they were threatening to do; that there was no necessity for the construction of the proposed road; that it would be a useless expenditure of the money of taxpayers of Tarrant County, Texas; that there were no available funds belonging to said county with which such road could be constructed and that it was an abuse of discretion upon the part of the Commissioners' Court of Tarrant County to so build the same; other allegations were made along the lines last pointed out which we consider unnecessary to further mention here, but sufficient allegations were made to warrant the 96th District Court to restrain appellees, if it had jurisdiction in the matter.

The petition of appellants came on for hearing at a date set by the court, and the appellees appeared and replied with what they termed a plea to the jurisdiction of the 96th District Court, alleging the controversy grew out of the proposed building of the road across appellants' land, mentioned in their petition, but that the Commissioners' Court of Tarrant County had at that time pending in the County Court at Law No. 1, Tarrant County, Texas, condemnation proceedings therefor, and that, that court having assumed jurisdiction of said controversy, with full authority to do so, the 96th District Court of Tarrant County was without jurisdictional power to interfere with same. Allegations were made that the Commissioners' Court of Tarrant County had made an effort to agree with appellants upon the value of the lands to be taken and as to damages, if any, to the residue of appellants' land and, having failed to agree thereto, had entered its order on the 6th day of January, 1936; that it was necessary to acquire said land for the construction of the road and directing that con-

demnation proceedings be entered for its acquisition; that on January 7, 1936, Tarrant County presented its petition to the judge of the County Court at Law No. 1, Tarrant County, Texas, asking that said judge appoint special commissioners to make an award to appellants for the value of the land to be taken and for damages, if any. That condemnation proceedings were then instituted under the general statutes on the subject of eminent domain, as set forth in Revised Civil Statutes 1925, and amendments thereto (Vernon's Ann.Civ.St. arts. 3264–3271), and also acting under section 12, c. 16, p. 41, Acts of the Regular Session of the 44th Legislature, 1935 (Vernon's Ann.Civ. St. art. 6716 note).

Appellees further alleged in their plea to the jurisdiction of the 96th District Court that special commissioners were duly appointed, took oath of office, set a time for hearing, notified appellants of the time and place, heard their demands, set an award and made return of their acts to the judge of said County Court at Law No. 1, Tarrant County, Texas; that the award was unacceptable to appellants; that the amount of the award was paid into the hands of the county clerk of Tarrant County; that the condemnation proceedings were pending in said County Court at Law No. 1, Tarrant County, Texas, when appellants' application for the restraining order was requested of the said 96th District Court, and that the said County Court at Law No. 1, Tarrant County, Texas, had properly assumed jurisdiction of said controversy, and that said 96th District Court was without jurisdiction to grant the relief prayed for.

A hearing was had in the District Court and testimony offered, at the conclusion of which hearing the court held it was without jurisdiction and entered its order to that effect. The appellants excepted to the action of the court and gave notice of appeal.

On the 17th day of September, 1936, appellants presented their petition to this court for a restraining order against appellees, pending said appeal, for the purpose of keeping the property in status quo, alleging the material parts of the proceedings theretofore had and renewing their claim that the condemnation proceedings in the County Court at Law No. 1, Tarrant County, Texas, were void and that the said court had no jurisdiction in the premises. This court issued its restraining order as prayed for and the appellees, upon a day set by the court for hearing, have filed their motion to dissolve the restraining order issued by this court.

The parties, while orally submitting this cause, agreed that this court should determine whether or not the 96th District Court of Tarrant County had jurisdiction of the subject matter involved in this case, and if the injunction prayed for should have been granted by that court. From a determination of this question we may know whether or not our restraining order should be dissolved.

The issue thus made for our determination is whether, under the pleadings and facts shown, the 96th District Court of Tarrant County, Texas, had jurisdiction to issue its restraining order and enjoin appellees from going upon and taking possession of the lands of appellants for the purposes and under the conditions which they claimed the right to act.

There can be no question but that Tarrant County has the right of eminent domain in matters such as are involved in the case before us. It is equally true that under Rev.Civ.Statutes arts. 1970—62 and 1970—45, County Court at Law No. 1, Tarrant County, Texas, has jurisdiction in proper actions for condemnation in Tarrant County subject to the limitations provided by law common to the county courts throughout the State.

It is contended by appellants that appellees would have to proceed under the provisions of title 116, chapter 2 (articles 6702–6716, Rev.Civ.Statutes, as amended [Vernon's Ann.Civ.St. arts. 6702–6716]), in order to legally condemn their property for road purposes and to confer jurisdiction upon County Court at Law No. 1, Tarrant County, Texas, for that purpose. Appellees claim their remedy is not limited to the provisions of the title and articles of the statutes last above mentioned, but that they had the option to proceed under the provisions of title 52 (articles 3264–3271, Rev.Civ.Statutes, as amended [Vernon's Ann.Civ.St. arts. 3264 –3271]), or even under provisions of section 12, c. 16, p. 41, of the Acts of the Regular Session of the 44th Legislature, 1935 (Vernon's Ann.Civ.St. art. 6716 note).

Appellees made no pretension that they have proceeded in the matter of condemning appellants' land under the provisions

of title 116, chapter 2 (articles 6702–6716, Rev.Civ.Statutes, as amended [Vernon's Ann.Civ.St. arts. 6702–6716]), but that they have followed the provisions of title 52, articles 3264–3271, Rev.Civ.Statutes (as amended [Vernon's Ann.Civ.St. arts. 3264–3271]) as well as also the provisions of chapter 16, p. 41, Acts of the Regular Session of the 44th Legislature, 1935 (Vernon's Ann.Civ.St. art. 6716 note), and that by so doing the County Court at Law No. 1, Tarrant County, Texas, acquired jurisdiction and therefore the 96th District Court was without power to interfere by enjoining its acts.

■ We shall first observe the provisions of title 116, chapter 2, embracing articles 6702–6716, Rev.Civ.Statutes, under the heading of "Establishment of County Roads," and title 52, embracing articles 3264–3271, Rev.Civ.Statutes, under the heading of "Eminent Domain." All parties to this case concede, as they must, that counties of this State have the right of eminent domain and may by proper proceedings take and apply the lands of an individual to those public purposes enumerated by law.

■ For many years prior to the codification of our present Revised Civil Statutes of 1925, the provisions now contained in title 116, chapter 2, constituted our guide and standard of procedure for laying out public roads in the respective counties. These provisions were as they are now under articles 6703–6710, inclusive, generally known as the jury of view system, and by the terms of the last mentioned article an appeal could be taken from the award of the jury of view to the county court, but such appeal should not prevent the opening of the road but to determine the amount of damages only. It is conceded by appellees that they did not proceed in the case at bar under title 116, chapter 2, and that in such cases, because of the limited purposes of the appeal provided for, the District Court, with its appellate and supervisory powers over the Commissioners' Court, would have jurisdiction to restrain and enjoin the Commissioners' Court in certain instances, and for some of the reasons raised by appellants in this case. But appellees earnestly insist that by title 52 (article 3264 et seq.) the county had the right to condemn appellants' lands for road purposes and that an appeal under such procedure was not limited to the matter of damages as under title 116, chapter 2, but on appeal all pertinent matters could be considered by the court. This being true, it is argued that the County Court at Law No. 1, Tarrant County, had full and complete jurisdiction in the premises and the 96th District Court had no power to interfere with it.

Rev.Civ.Statutes, art. 3264a, under title 52, which appellees claim confers the right of condemnation of appellants' lands for public road purposes, reads as follows:

"The right of Eminent Domain is hereby conferred upon counties of the State of Texas for the purpose of condemning and acquiring land, right of way or easement in land, private or public, except property used for cemetery purposes, where said land, right of way or easement is necessary in the construction of jails, courthouses, hospitals, delinquent and dependent schools, poor farms, libraries or for other public purposes, where such purpose is now or may hereafter be authorized by the Constitution or Statutes of this State.

"All such condemnation proceedings shall be instituted under the direction of the commissioners' court, and in the name of the county, and the assessing of damages shall be in conformity to the Statutes of the State of Texas for condemning and acquiring right of way by railroads. That no appeal from the finding and assessment of damages by the commissioners appointed for that purpose shall have the effect of causing the suspension of work by the county in connection with which the land, right of way, easement, etc., is sought to be acquired. In case of appeal, counties shall not be required to give bond, nor shall they be required to give bond for costs."

It is contended by appellees that by the provisions of the above article it was intended to confer power of condemnation on counties for public road purposes as evidenced by the wording of the statute, for the reason it uses the term "right of way," which expression could hardly be applied to building sites, and for the further reason the right is extended to counties where land is sought for other public purposes, and that public roads and highways are clearly within that class.

So far as we have been able to find, the precise question of whether or not title 52 (article 3264 et seq.) confers the power

upon counties to condemn privately owned lands for public road purposes has never been before the Courts of Civil Appeals in but two instances, they being the cases of O'Keefe v. Hudspeth County et al. (Tex.Civ.App.) 25 S.W.(2d) 625, 626, and Tod v. Massey et al. (Tex.Civ.App.) 30 S.W.(2d) 532, 534. In each of these cases the question was decided adversely to the contention of appellees.

In the O'Keefe v. Hudspeth County Case, O'Keefe had asked for injunctive relief at the hands of the District Court as against a condemnation proceeding by the Commissioners' Court of his lands for road purposes. It is disclosed the condemnation was sought, as in the case at bar, under title 52, art. 3264 et seq., and it was alleged the proceedings were void. The opinion quotes the bill under which article 3264a was enacted, including the caption and emergency clause. The caption, in part, reads:

"An Act conferring upon counties the right of eminent domain, where land, right of way or easements are necessary to be secured for the construction of jails, * * * and providing for the institution of such proceedings in the name of the county," etc. Acts 1925, c. 116.

The emergency clause to the bill reads:

"The fact that counties, except for road purposes, have not the right of Eminent Domain, and cannot institute proceedings to acquire land necessary to erect buildings and for other public purposes, and that it is essential in many counties that they have this right in order to proceed with public improvements, creates an emergency and an imperative public necessity," etc. Section 2.

The court further says: "It is the contention of the appellees that under this act Hudspeth county was authorized to condemn for road purposes the specific tracts of land described in its condemnation petition in the manner and form prescribed by title 52, R.S. Upon this assumption appellees seek to sustain the validity of the condemnation proceedings under which they are undertaking to appropriate the land for public road purposes.

"In our opinion the act quoted [article 3264a] has no application in condemnation proceedings by counties for county road purposes, and upon its face it so discloses. In this view we are fortified by the fact that the act was passed at the same legislative session which adopted the Revised Statutes of 1925. Chapter 2, title 116, art. 6702 et seq., R.S., regulates the laying out and establishment of county public roads and condemnation proceedings incident thereto. The act relied upon by appellees having been adopted at the same session of the Legislature which adopted the 1925 Revised Statutes, the two laws are to be construed together as if in one act, and effect given to both, if it can be done by reasonably fair construction. Southern Pac. Co. v. Sorey, 104 Tex. 476, 140 S.W. 334; McGrady v. Terrell, 98 Tex. 427, 84 S.W. 641. There is no repugnancy or even inconsistency between the act invoked by appellees and chapter 2 of title 116, R.S.

"We are therefore of the opinion that, when a county in its own right, as it undertook to act in the present instance, desires to lay out and establish a county road and to condemn land necessary for such purpose, it must proceed in accordance with chapter 2, tit. 116, R.S."

The court in the same opinion holds the procedure under chapter 2, title 116, is radically different from that provided under title 52, and that for the reasons given the attempted condemnation proceedings were void and the injunctive relief sought by appellant should have been granted, citing Vogt v. Bexar County, 5 Tex.Civ.App. 272, 23 S.W. 1044; Benat v. Dallas County (Tex.Civ.App.) 266 S.W. 539.

In the Tod v. Massey Case, supra, the identical question under consideration here was before the court. Tod sought injunctive relief at the hands of the district court against the condemnation of his property by the county for road purposes, alleging the requisites of title 116, ch. 2, Rev.Statutes, providing for notice of condemnation, had not been met by the county and that its proposed condemnation proceedings were void. The county, through its officials, challenged the jurisdiction of the district court to issue its injunctive relief, since the county court had assumed complete jurisdiction of the cause for all purposes. While the opinion does not specifically state under which title of the Revised Statutes the county sought to condemn appellant's property, the procedure shown to have been followed clearly indicates it was had under title 52, as was done in the case at bar. The court reasoned on the point in this language:

"There are in our Statutes two titles under which provision is made for condemning and taking private property for public use. The first is 'Title 52,' under the head of 'Eminent Domain' (articles 3264–3271), and the other is 'Title 116, Chapter 2,' under the head of 'Establishment of County Roads' (articles 6702–6716). The first, we think, clearly provides the method and procedure to be followed in the condemnation and taking of private property for purposes of public use, other than for public roads, such as right of way or easement where such right of way or easement is necessary in construction of jails, courthouses, hospitals, etc., and other public purposes, as distinguished from public road purposes. And the second makes provision for the establishment and laying out of public roads and provides the method and procedure for condemning and taking private property for such purposes. It is there provided that petitions for the laying out and opening of public roads shall be presented to the commissioners' court, and that such laying out and opening shall be by such court. All procedure looking to the opening of public roads is to be conducted through or under the orders of such court. * * *

"It being clear that the proceedings instituted to take appellant's land were to take it for road purposes and not for any of the purposes named under title 52, supra, the proceedings must, if successful, be instituted and prosecuted under the provisions of title 116, c. 2, Revised Civil Statutes of 1925, and not under the provisions of title 52, supra.

"All proceedings to condemn and take land for public roads under the provisions of title 52 are void, and any attempt to do so may be enjoined by the district court."

Under the heading of Eminent Domain, Texas Jurisprudence, vol. 16, pp. 593, 594 and 595, discusses the trend of decisions in matters of condemnation, drawing the distinction between the procedure to be followed in acquiring lands for public roads and lands for other public purposes covered by statutes, and at section 27, pp. 594, 595, says: "Accordingly, when a county not acting under a special road law seeks in its own right to condemn land for road purposes, it must proceed in accordance with the provisions of this special enactment; and proceedings under the provisions of title 52, Rev.Statutes, relating to eminent domain for other purposes, are void, and confer no rights upon it and may be enjoined." In the footnotes of the volume of Texas Jurisprudence from which we have quoted there appears this further observation: "While this rule seems to be fully established, there are a number of decisions in which the appellate court, when passing on litigation arising from attempted takings of land for county road purposes under the general condemnation statutes, appear to have ignored it." The cases of Central Power & Light Co. v. Willacy County (Tex.Civ.App.) 33 S.W.(2d) 476; Coleman v. Archer County (Tex.Civ.App.) 16 S.W.(2d) 942; Hackett v. Willacy County (Tex.Civ.App.) 16 S.W.(2d) 297, are cited in support of the last quoted proposition. We have examined the opinions referred to and find that in most instances the question of taking lands for purposes other than for public roads was under consideration, while at least one of the cases cited involved taking lands for widening public roads, but the question of the validity of the condemnation proceedings because of a failure to follow the procedure laid down in title 116, chapter 2, was not raised, nor was that phase of it discussed by the court. Even though the parties' rights were adjusted by the court upon the basis of a performance of the requirements of the act under consideration, and all other provisions ignored, we do not construe the holding as being in conflict with cases in which the issue is clearly made, and upon that issue the court decides one or the other is correct.

Much of what we have said with reference to the above cited cases, more especially the case of Coleman v. Archer County, supra, is likewise applicable to the case of Cook v. Ochiltree County (Tex. Civ.App.) 64 S.W.(2d) 1018, cited by appellees in support of their contention. In the last mentioned case the Commissioners' Court sought to condemn additional right of way for a then existing public road. It appears this was to meet the conditions of the State Highway Department. While not definitely stated in the opinion, but we gather from what is said, the procedure of title 52, R.S., was followed. The Court of Civil Appeals proceeded upon the theory that the authority for such condemnation was founded on article 6674n, Rev.Statutes (Acts 1933, c. 207), which is a provision for acquisition

of building materials and widening of right of ways necessary to meet the requirements of the Highway Commission, and provides for procedure as under articles 6894, 6895 of 1911 R.S., now article 6711, subd. 3, and from the opinion of the court the question of whether or not the proceedings should be instituted by the Attorney General was involved. It was held the proceedings were properly instituted by the Commissioners' Court of Ochiltree County and were sufficient to give the county court of that county jurisdiction. It is not clear from the opinion upon what grounds it was contended by appellants the District Court had jurisdiction. Whether it was because the condemnation proceedings were void because they had followed title 52, R.S., or because there was an abuse of discretion by the Commissioners' Court, does not appear. Again, as in other cases referred to by us, the question now before this court was not raised and was not discussed by that court.

We are inclined to the opinion, and so hold, that correct conclusions were reached by the courts in the cases of O'Keefe v. Hudspeth County and Tod v. Massey, supra. We further hold that in all proceedings for the condemnation of lands for the construction of public roads, the provisions of title 116, chapter 2, of the Revised Statutes (article 6702 et seq.), alone are applicable; that title 52, R.S. (article 3264 et seq.), and the proceedings prescribed thereunder for condemnation apply only to the taking of lands for the purposes therein mentioned, and we further hold the provisions of title 52, while mentioning "right of way," apply only as stated in the act to where "said land, right of way or easement is necessary in the construction of jails, * * * or for other public purposes." We also hold that the expression "or other public purposes" does not refer to public roads for the reasons: First, because that subject is fully covered by title 116, chapter 2, R. S., and second, because the Legislature subsequent to the enactment of article 3264, under title 52, evidently desiring to make it more definite as to what was meant by the expression "other public purposes," at the Second Called Session of the 43d Legislature, p. 89, c. 37, § 1, in 1934 (Vernon's Ann.Civ.St. art. 3264), amended article 3264 so as to extend the right of eminent domain to irrigation, water improvement and water power control districts. A large number of the cases cited by appellees for our consideration are cases involving the right of such political bodies and subdivisions to exercise the right of eminent domain provided by title 52, R.S., and we believe they were properly disposed of under the provisions of that title.

This brings us to a discussion of the Acts of the 44th Legislature, 1935, Regular Session, c. 16, p. 41 (Vernon's Ann.Civ.St. art. 6716 note). This act is very broad in its scope and covers many phases of the duties of the Commissioners' Court in counties to which it applies. Tarrant County falls within its provisions and limitations. Among the duties of the Commissioners' Court in such counties is that of providing and maintaining a suitable and adequate public road system; it is unnecessary for us to pass upon or to discuss any of its other provisions, and we have not attempted to do so. A portion of section 12 of the act (Vernon's Ann. Civ.St. art. 6716 note) reads: " * * * That nothing contained in this section shall be held to repeal the provisions of the General Law now in force or that may hereafter be passed relating to the opening or construction of public roads by a jury of view, but this section shall be held to be cumulative thereof, and the Commissioners' Court of said county may, at the option of said Court, in such cases proceed under the provisions of such General Law or under the provisions of this Act according as same may be best adapted, in the judgment of said Commissioners' Court, to expedite the relief sought to be obtained."

No contention is made by appellees that an attempt was made to condemn appellants' property under the General Laws relating to opening public roads by the jury of view system, and it must follow that the jurisdiction of the County Court at Law No. 1, Tarrant County, to hear the appeal from the award of the special commissioners, depends upon whether or not the provisions of the legislative act, relied upon, had been complied with.

As we construe the act, it is optional with the Commissioners' Court whether it relies upon the provisions of the act or upon the General Laws for condemnation of lands for public road purposes, and if the Commissioners' Court chooses to follow the former, it must be shown the con-

ditions precedent to such right or option have been met. There are many commendable provisions in the act necessary to be complied with before appellees could bring themselves under it.

In the first section of the act (Vernon's Ann.Civ.St. art. 6716, note) it is provided:

"The Commissioners Court of such counties shall have full power and authority, and it shall be its duty to adopt, at a meeting of said Court of which the County Judge and at least three of the County Commissioners of said counties shall be present and cause to be recorded in the minutes of said Court, and put into effect such rules, regulations, plans and system for the maintenance, laying out, opening, widening, draining, grading, constructing, building and repairing of the public roads of said counties, other than the State Highways located therein, as the available funds of the counties will permit so as to facilitate travel between the communities thereof, subject to and in harmony with the provisions relating to the County Engineer as herein specified."

Section 2 (Vernon's Ann.Civ.St. art. 6716 note) provides among other things for the appointment of a county engineer, for his qualifications, duties and for a good and sufficient bond; and by section 3 (Vernon's Ann.Civ.St. art. 6716 note) such engineer shall, under the direction of the Commissioners' Court, classify all public roads in the county, which classification, when approved, shall be compiled in book form and become a part of the county's records; that the county road system shall be laid out and mapped, designating thereon the classes of roads in the county; this shall be properly indexed for public inspection. By section 7 (Vernon's Ann.Civ.St. art. 6716 note) it is provided that when funds are available and he is authorized by the Commissioners' Court to do so, the county engineer shall make a thorough survey of all roads then open, with a view to determining new roads necessary to be opened in the future, and that when the survey is completed by him and adopted by the Commissioners' Court, the system shall be known as the "Master Plan"; and that when the road system is thus planned, all new construction shall be done in accordance with such Master Plan with a view to ultimately completing the same, both as to location and character of construction, these plans shall be taken into consideration by the Commissioners' Court in their subsequent deliberations as to the necessity and convenience of the public, and shall give priority to those roads that will result in the greatest service to the greatest number of the citizenship of the county. Section 8 (Vernon's Ann.Civ.St. art. 6716 note) provides, among other things, that when the "Master Plan" is submitted to the Commissioners' Court, that court shall set a date for a legal meeting of the court and give public notice, inviting the citizenship to be present at its consideration and to enter protests, if any, of such Master Plan, and to make such suggestions as they deem pertinent in connection with same. By section 11 (Vernon's Ann.Civ.St. art. 6716 note), it is provided that before any construction shall have begun on any road or highway to be improved, the county engineer shall have made accurate surveys of the roads and highways to be improved and shall file with the records of the court plans and specifications and estimates as to the costs thereof.

■ Haverbekken v. Hale et al., 109 Tex. 106, 204 S.W. 1162, 1163, was a case in which an attempt had been made to condemn lands for public road purposes under General Laws by a jury of view, requiring notice of filing petition and of the date of the court's intention to act thereon. There was a contention that sufficient notice of these matters was not given, and it was claimed upon the other hand the Commissioners' Court had the right to open the new road upon its own motion, thus eliminating the necessity of a compliance with the statutory requirements of notice when the road was to be laid out under the jury of view system. Chief Justice Phillips, speaking for the court, said: "But it was clearly not intended that in all cases it should so act. [Lay out roads of its own motion.] To ascribe such an intention to the Legislature is to impute to it no purpose whatever in its enactment of Articles 6875 and 6876. It renders them vain and meaningless. * * * They furthermore make it plain that when the Court's jurisdiction is thus invoked, it is without the power to act except upon a substantial compliance with their requirements." Further discussing the provisions of the statute and the necessity for their observation, the court said: "There is no difficulty in observing these requirements. If they were not intended

to be observed, there was no need for their enactment. Their purpose was to provide for the exercise of the sovereign right to appropriate private property for a public purpose in promotion of the general welfare. They were intended to insure a just exercise of this high power and to prevent its abuse." Following the holdings of the Supreme Court in the case quoted from, we hold it was jurisdictional to the County Court at Law No. 1, Tarrant County, that the laws under which appellees sought to take appellants' lands had been substantially complied with.

It was held in Williams v. Henderson County Levee Imp. District (Tex.Com. App.) 59 S.W.(2d) 93, 96: "Furthermore, the decisions hold that no rule is better established in this state than condemnation proceedings are purely statutory and must be strictly complied with. * * * The burden was upon the district [appellees in this case] to show that it had complied with the law. This was not done. Under the state of this record, the district was a naked trespasser."

In Clower v. Fannin, etc., Levy District (Tex.Com.App.) 39 S.W.(2d) 831, 833, it was said: "Proceedings to condemn property for public use are special in character, and their validity must depend upon a strict compliance by the condemning authority."

■■ There was no effort made on the part of appellees to either allege or prove that they had complied with the requisite provisions of the act hereinbefore enumerated, which we consider essential to the validity of their effort to take the property of appellants for road purposes thereunder. It does not appear that any such "Master Plan" of a road system was ever made in Tarrant County, nor that the road proposed to be constructed was a part of or incident to such "Master Plan." The Legislature wisely provided that counties desiring to take advantage of the provisions of the act should go about its public road construction program systematically to effectively carry out the previously prepared and accepted "Master Plan," one in which the public had been invited to, and, if it so desired, had participated in its adoption. The pleadings and the transcript of evidence offered are void of anything to indicate these conditions were met. We therefore hold appellees could not maintain its action under the provi-

sions of the 44th Legislature's General Act, c. 16, p. 41 (Vernon's Ann.Civ.St. art. 6716 note).

Based upon the reasons assigned, we hold the acts of the Commissioners' Court in attempting to condemn the property of appellants for public road purposes were void and the County Court at Law No. 1, Tarrant County, Texas, acquired no jurisdiction on the appeal from the award of the special commissioners; that under article 5, § 8, of the Constitution of this State, and article 1908, Rev.Civ.Statutes 1925, the District Court has general supervisory control over the acts of the Commissioners' Court and may, by the exercise of its equitable powers, enjoin the wrongful acts of the Commissioners' Court in an effort to exercise the right of eminent domain conferred upon Tarrant County; and that the 96th District Court of Tarrant County had jurisdiction to hear and determine the matters and things presented by appellants in their petition for injunctive relief. Lone Star Gas Co. v. Birdwell (Tex.Civ.App.) 74 S.W.(2d) 294; Benat v. Dallas County (Tex.Civ.App.) 266 S.W. 539 (writ refused); Gulf Coast Irrigation Co. v. Gary, 118 Tex. 469, 14 S.W.(2d) 266, 17 S.W.(2d) 774.

As above stated, by agreement of all parties, the entire record of the proceedings had in the 96th District Court of Tarrant County is before us for consideration along with appellees' motion to dissolve the restraining order heretofore issued by this court; we find and so hold that the acts of the Commissioners' Court of Tarrant County in its attempt to condemn appellants' land for public road purposes were not authorized by the provisions of the Revised Civil Statutes under title 52, and that the record before us does not show the Commissioners' Court of Tarrant County has complied with the provisions of Acts of 44th Legislature, 1935, ch. 16, p. 41, at its Regular Session (Vernon's Ann.Civ.St. art. 6716 note), so as to authorize it to condemn appellants' property for public road purposes; and that the County Court at Law No. 1 of Tarrant County, Texas, acquired no jurisdiction of the appeal from the purported award by the special commissioners, and that all said proceedings were void; that the 96th District Court of Tarrant County had jurisdiction to hear appellants' petition for injunctive relief and should have made its previous restraining order permanent.

The judgment of the 96th District Court holding it was without jurisdiction is therefore reversed and judgment here rendered that the injunction prayed for by appellants is made permanent and this order shall be certified to the trial court with instructions to enter its judgment, order and decree in conformity herewith.

BROWN, Justice (concurring).

Concurring in the conclusions reached in the able opinion by Mr. Justice SPEER, the writer feels impelled to comment on the status and effect of chapter 16, Acts of the 44th Legislature, passed at the Regular Session thereof (Vernon's Ann. Civ.St. art. 6716 note), which was enacted as if it were a general law, and the validity of which depends upon its being in fact a general law and not a local law. The court's opinion does not touch this phase of the case. The act is made to apply to counties which meet the following requirements, and to no others: The county must have a population of more than 160,000 inhabitants, and less than 230,000, according to the last census taken by the Government of the United States, and in such county so qualifying there must be an incorporated city having a population in excess of 100,000, according to such census. We are compelled to take judicial notice of the results and findings disclosed by the last Federal census, which was taken in 1930, in order to ascertain what county or counties actually come within the provisions of the act.

A study of such Federal census facts and figures discloses that Tarrant County was, at the time of the passage of the act, the only county in the state of Texas to which the law could apply. By the very provisions of the act, the populous counties of Bexar, Dallas and Harris, in which the three largest Texas cities are situated, were not only excluded from its provisions, but because of their great population none of these can ever be affected by the act.

Tarrant County, with a population of 197,553, is, according to the said last Federal census, the fourth county in population, within our State. The next county, or fifth in population, is Jefferson, with a population of 133,391, and the sixth county in population is El Paso, with 131,697. Beaumont, the largest city in Jefferson County, has a population of 57,732, and El Paso, the largest city in El Paso County, has a population of 102,421.

No other county in the State of Texas has a population of so much as 100,000.

If we can take judicial notice of the Federal census of 1930, we can also take such notice of the next preceding census taken in 1920. Taking such figures and assuming that the same increase in population may be reasonably expected between the census of 1930 and that of 1940, as was had between 1920 and 1930, what do we find?

It will be 10 years before Jefferson County will, within all human expectations, attain a population of 160,000, and it will be approximately 20 years before the City of Beaumont attains a population of 100,000.

The County of El Paso will, by enjoying, in the future, such past accretions, have approximately 160,000 inhabitants within the next 10 years, while its largest city (El Paso) now qualifies, with more than 100,000 inhabitants. It is easily seen that, in the natural course of human events, two counties in the State of Texas will be able, in many years, to come within the provisions of this act. It is obvious to the writer that this bill was enacted for the sole purpose of making it apply to Tarrant County, just as the members of the Legislature, at the time of its passage, knew that it would apply only to such county. Drawing the bill so that the county's population must be over 160,000 and less than 230,000 made it apply to Tarrant County when passed, and the figures were spread so that, according to human expectations, based on the last two Federal censuses, it would remain applicable to Tarrant County for a period of about 10 years, before Tarrant County becomes disqualified and at which time some other county might become qualified. Only Divine Power could possibly foresee when any other counties other than Jefferson and El Paso will ever be affected by the bill.

If this were intended as a general law, and it is beneficial to the citizens of the populous counties of Texas, there was neither rhyme nor reason in limiting its application to the county, or counties, that were blest with more than 160,000 inhabitants and less than 230,000.

The writer has had experience in the House of Representatives of Texas, as a

member of that body in the 32nd and the 36th Legislatures, and he knows, from experience, that, when this bill came before the 44th Legislature for consideration, the matter was made plain to the members thereof that the act applied only to Tarrant County.

The act is a local law clothed in the garments of a general law and ought to be condemned as such, having been passed without the public notice and publication required by the Constitution of Texas for all local and special acts.

Within the last few years, it has become a peculiar practice to have the State Legislature pass laws, having local effect only, in the guise of general laws. This is a pernicious practice which ought to be condemned by every court in Texas, and a stop should be put to such unwarranted evasions of the plain provisions of our Constitution.

The act is unconstitutional and void, because its very language and limitations show that the purported classification is arbitrary, unwarranted and fictitious. No such class existed at the time the law was passed and there was and could be no reasonable expectation that the act would apply to any other county than Tarrant, within the reasonably near future. The provisions showing that the act would and did apply to large counties having a population of more than 160,000 and less than 230,000, when it was then known to the lawmaking bodies that there were three of the largest counties in Texas which were expressly excluded, and which, by the very provisions of the act, could never be affected by the law, because the population in each far exceeded the restrictions made, condemns the act as one setting up arbitrary, unwarranted and fictitious classifications.

Let us look into the history of this act of the 44th Legislature (chapter 16), passed in 1935 (Vernon's Ann.Civ.St. art. 6716 note). It expressly (section 36) repeals chapter 12 of Acts of the 43rd Legislature (1933), which was its counterpart and which was the first attempt to pass a road law for Tarrant County without proceeding as is required for special and local laws. This first monstrosity, passed in 1933, specifically (section 33) repealed the local road laws that had theretofore been passed for and in behalf of Tarrant County. The 1933 act repeals Senate Bill 92, passed at the 3rd Called Session of the 36th Legislature, its amendments, Senate Bill No. 10, passed at the 4th Called Session of the 36th Legislature, and its amendment, House Bill 188, being chapter 96 of Special and Local Laws passed by the 38th Legislature at its Regular Session. Thus it appears that the Legislature, through successive years, passed local and special road laws for Tarrant County, up to the year 1933, when the 43rd Legislature undertook to pass a road law for Tarrant County by specially repealing all of the local road laws theretofore passed and undertook to substitute therefor a road law which has the appearance of a general law on its face, but the very provisions and terms of which show that it then applied to and could apply to only one county in the State—Tarrant.

The very acts of the Legislature show an intent to enact a local law for Tarrant County and no other intent can be reasonably deduced therefrom. But it is contended that the act is fully authorized by article 8, § 9, of the State Constitution, which declares:

"And the Legislature may pass local laws for the maintenance of the public roads and highways, without the local notice required for special or local laws."

Let us see how far-reaching this act is and what it purports to do other than simply maintain the public roads and highways of the county or counties affected. Section 2 creates the office of county engineer, provides for his salary and term of office, and prescribes that he shall be paid out of the Second Class Road and Bridge Fund. Section 3 makes it the duty of the engineer to classify all the public roads in his county, prepare a suitable map showing the classes of all roads. Section 4 makes it the duty of the engineer to make, every 3 months, a complete inventory and appraisement of all tools, machinery, equipment, materials, trucks, cars, teams, wagons, and other property owned by the Second-Class Road and Bridge Fund as a permanent record to be kept by the county auditor, and provides for the making and entering on the minutes of the Commissioners' Court of orders showing what property and equipment becomes unsalable, and the disposition thereof.

Section 5 provides that the Commissioners' Court shall employ all help necessary for the discharge of their public service; and that such employees shall receive such

compensation as may be fixed by the said court, and paid out on orders entered by the court which show the necessity for such employment, the amount of compensation and the fund from which payment is to be made.

Section 6 provides that the engineer shall keep daily, in duplicate, a time sheet showing the amount of time, character of work performed, and the place where performed by each person employed in road maintenance or construction, one copy to be given to the county auditor.

Section 7 provides that the county engineer shall make a careful survey of all roads then opened and constructed, with a view of determining what new roads and connections of roads should be opened and constructed, and what roads should be widened and improved. This section provides for what is designated as a "Master Plan" of roads for the county.

Section 8 provides that, when this "Master Plan" is prepared by the engineer and submitted to the Commissioners' Court for adoption, such court shall set a date at a regular meeting, called for the purpose, and give at least 2 weeks' public notice of the meeting, inviting the citizenship of the county to be present and protest any part of the "Plan" and give suggestions pertinent thereto, and that the decision of the court shall become and be final and conclusive as to the "Plan," and no succeeding Commissioners' Court shall have power or authority to alter, change or amend any of its provisions except by unanimous vote.

Section 9 makes it the duty of the county auditor to compute the pay for all employees, under the court's supervision, from time sheets furnished by the engineer and specifically makes it the duty of the said auditor, "at such time or times as he deems advisable, to check any or all of such employees while they are actually engaged in work."

Section 10 gives the Commissioners' Court the authority to employ special legal counsel "to advise the Courts or the Commissioners thereof in all matters wherein the services of counsel may be required and also to conduct the litigation of the County in which the interests of the county may be involved."

Section 11 provides that, before construction begins on any road or highway to be improved, the engineer, under the direction of the court, shall make careful and accurate surveys of the roads and highways to be improved and shall file the plans, specifications and cost estimates as records. The provisions of this section are specifically eliminated as affecting work done by county convicts.

Section 12 provides the express authority on the part of the Commissioners' Court to condemn lands for all road purposes, "in the same manner as now or may hereafter be prescribed by law for condemnation by railroad corporations." This section provides that it does not repeal the provisions of the General Laws that govern the opening or construction of public roads by the jury of view, and makes the act cumulative of the general road laws.

Section 13 deals with the duties of the court where the better drainage of any public road in the county is found to be necessary, where the ditches along the right of way of a railroad make it necessary to empty or drain such ditches, and empowers the court with the right to give notice to such railroad of its order requiring the railroad to effectuate such drainage within 60 days after notice, and, in the event the railroad fails to comply with the order, empowers the court to do the work and recover the sum expended therefor, in the name of the county, for the benefit of the road and bridge fund.

Section 14 provides that the payment of road taxes by labor is abolished and all laws concerning overseers are repealed.

Section 15 provides that "each member of the Commissioners' Court shall be and he is hereby required to devote all of his time * * * to the duties of his office. * * * He shall personally inspect the condition of the roads and bridges of the county, and shall see to it that employees under the control of the Commissioners' Court perform their full duties." The salary of each commissioner is fixed at $4,200.00 per year, "payable in monthly installments, of which at least one-half and not more than seventy-five (75) per cent shall be paid out of the Road and Bridge Fund of the county, and the remainder out of the General Fund."

Section 16 provides that it shall be unlawful for the court to levy any road and bridge tax in excess of the maximum rate prescribed by law, making it a misdemeanor punishable by a fine of not more

than $500.00 to vote for the levying of any such excess tax.

Section 17 provides that the court may require county convicts, who are physically able, to work on the roads "under such rules and regulations as the Court may prescribe," and provides that each convict shall be given credit for $1.00 per day for such work, "one-half of which shall be as nearly as practicable, applied to the fine, and one-half to the Court costs, provided that this shall not be so construed as to relieve a convict from the payment of all costs for which he would be liable under the General Laws of this State." It further provides that the Commissioners' Court "may, as a reward for good behavior and faithful service, grant a reasonable commutation which shall in no case exceed one-tenth of the whole time." It further provides for the furnishing of houses, tents, clothing, food, medicine and medical attention, supplies and guards, as the court deems· necessary for the safe and humane treatment of the convicts, that the court may make certain rules and regulations covering reasonable and humane punishment necessary to require the convicts to do good work, and provides that the guards may administer all such, under the direction of the court. It provides that the court may establish rewards, not to exceed $10.00 in any instance, to be paid out of the road and bridge fund for the capture of an escaped convict.

Section 18 ·empowers the court to submit to the qualified voters of the county the question of issuing bonds for the purpose of building, repairing, maintaining, etc., of first and second class roads in the county.

Sections 19, 20 and 21 set up the machinery for proper issuance of such bonds and levying of taxes to pay the same.

Section 22 makes it the duty of the county treasurer to keep a separate account of all the funds so raised and prohibits the expenditure of the money except on written order or warrant of the court.

Section 23 provides that no contract can be made for the expenditure of money derived from the sale of bonds until the engineer has made and filed with the court maps, plans, specifications, estimates, etc., of the work to be done, and same are considered and ordered of record; that the construction work may be done on roads by contract, day labor or by convict labor.

Section 24 provides for competitive bids for the purchase of tools, machinery, materials and supplies which may be purchased from the Second Class Road and Bridge Fund.

Section 25 elaborates on the handling of competitive bids.

Section 26 provides that "The Commissioners' Court is authorized and empowered, whenever and in such manner as it may determine, to transfer to and make a part of the Road and Bridge Fund of said county any money now in the county, to pay interest and create a sinking fund for any bonds of said county heretofore issued and which have now been retired and cancelled," and permits the court to expend such money, at their discretion, in constructing and repairing roads.

Section 27 provides for a detailed record of every vote for the expenditure of funds mentioned in the act.

Section 28 empowers the Commissioners' Court to plant shade trees along the side of public roads, erect signboards directing the way and giving the distance to the next important place on the highway, and provides that any person who removes such signboards or injures the shade trees shall be deemed guilty of a misdemeanor punishable by a fine of not less than $25.00 nor more than $100.00.

Section 29 forbids any member of the Commissioners' Court, under penalty of a fine, being interested directly or indirectly in any contract made pursuant to the act.

Section 30 provides that all fines for any and all violations of any of the provisions of the act and all moneys collected by the county on, under or by virtue of any contract made under the act "shall be applied to the Road and Bridge Fund of said county."

Section 31 defines the terms "Road" and "Highway."

Section 32 declares the act a public one, cognizance of which shall be taken without proof.

Section 33 provides for the making of an annual budget, by the Commissioners' Court, for the expenditure of all county funds; the keeping within such budget of

all expenditures; the right to depart from the budget through defined necessity. "Provided, that this provision shall be cumulative of all other General Laws on this subject governing counties where such provisions are not in conflict herewith."

Section 34 provides that: "The provisions of this Act are and shall be held and construed to be cumulative of all General Laws of this State on the subject treated of and embraced in this Act when not in conflict or inconsistent herewith, but in case of such conflict or inconsistency in whole or in part, this Act shall control said county."

Section 35 is a "saving clause," seeking to preserve all sections and provisions that may be found to be in harmony with the limitations found in our State Constitution.

Section 36 repeals "any and all laws and parts of laws in conflict or inconsistent" with the act, and expressly repeals the Act of the 43rd Legislature, chapter 12, being House Bill No. 3. The last-mentioned act is the first act which attempts to make a road law for Tarrant County through pretense of a general law.

Section 37 declares an emergency.

The 34th Legislature (1915) passed a special road law for Houston County (Acts 34th Leg., Sp.Laws, p. 149). This act was before Section B of our Commission of Appeals in the case of Austin Bros. v. Patton et al., 288 S.W. 182, Mr. Justice Speer writing the opinion.

The forceful and clear-cut language used by Mr. Justice Speer in condemning this act, as being unconstitutional, is most applicable to the act before us, even if it may be correctly argued that the act could be passed under the provisions of article 8, § 9, Texas Constitution.

Section 56 of article 3, Texas Constitution, declares emphatically: "The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing * * * Regulating the affairs of counties * * * Authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys; * * * Creating offices, or prescribing the powers and duties of officers, in counties * * * Remitting fines, penalties and forfeitures * * * Regulating the practice or juris-

diction of, or changing the rules of evidence in any judicial proceeding or inquiry before courts, * * * commissioners * * * or other tribunals, or providing or changing methods for the collection of debts, or the enforcing of judgments."

An analysis of the act before us (the substance of each section being given supra) discloses to the satisfaction of the writer that it violates several inhibitions of the Constitution above quoted. If we understand the many provisions of the act, to us it attempts to regulate the affairs of Tarrant County in several respects; it creates offices; it prescribes the powers and duties of officers in counties; it remits fines and penalties; it regulates the practice in and jurisdiction of proceedings before the Commissioners' Court and changes the rules of evidence in certain proceedings and inquiries before that court; it changes the method of collecting certain debts and the enforcement of certain judgments; it fixes the salaries of the County Commissioners for all services to be rendered as such officers. Tinner v. Crow et al., 124 Tex. 368, 78 S.W.(2d) 588, Commission of Appeals. It even attempts to divert all funds collected by Tarrant County to pay interest and create a sinking fund for any and all bonds theretofore issued, which have been retired and cancelled, to the Road and Bridge Fund, when, by the plain provisions of the State statutes, articles 1626 and 1628 (formerly 1433 and 1438), such excess funds must be devoted to payment of third class claims and debts.

Admitting, for the purpose of argument, that the act is authorized by the provisions of article 8, § 9, of our Constitution, which declares: "And the Legislature may pass local laws for the *maintenance* [italics ours] of the public roads and highways, without the local notice required for special or local laws," nevertheless its provisions are clearly repugnant to other inhibitions written into the Constitution, and pointed out above.

The writer is convinced that the act before us violates the provisions of section 56 of article 3, Texas Constitution, which forbids the Legislature from passing any local or special law "authorizing the laying out, opening, altering or maintaining of roads, highways, streets or alleys;" and that the provisions of section 9, article 8, Texas Constitution, do not au-

thorize the passage of a local or special road law *authorizing the laying out, opening, altering and maintaining of roads, highways, streets or alleys.*

We are fully aware of the fact that the Supreme Court of Texas, in 1906 (Dallas County et al. v. Geo. H. Plowman, 99 Tex. 509, 91 S.W. 221), speaking through Mr. Justice Brown, has held that the phrase "maintenance of public roads" must be construed as authorizing the lawmaking body to pass local laws for laying out, opening, altering and maintaining roads and highways, and that this opinion is in direct conflict with the writer's views on the matter. The construction given by the Supreme Court to the provisions of section 9, article 8, Texas Constitution, is a strained construction. The language thus construed was written into the Constitution after section 56 of article 3 was adopted. Had the Legislature intended to submit to the people an amendment to the Constitution broadening the powers of the Legislature with respect to passing local or special road laws authorizing the *"laying out, opening, altering, or maintaining of roads, highways, street or alleys"* (italics ours), it would have been so easy to have said so instead of using the one word "maintenance." The portion of the Constitution that was being amended dealt with four distinct subjects—*laying out, opening, altering* and *maintaining* roads. It cannot be successfully argued that "maintain" means "to lay out," "to open" or "to alter." The proper maintenance of an existing road may call for its alteration, but the words "laying out and opening," used in connection with roads, mean and can mean only. acts done in connection with the construction of roads not in actual existence.

The word "maintain" does not mean to provide or construct, but means to keep up; to keep from change; to preserve (Worcester's Dictionary) ; to hold or keep in any particular state or condition; to keep up (Webster's Dictionary).

In Moon v. Durden, 2 Exch. 21, the following definition is given: "The verb 'to maintain' signifies to support what is already brought into existence." The words "maintenance" and "repair," when applied to a highway, are held to mean practically one and the same thing. Barber Asphalt Pav. Co. v. Hezel, 155 Mo. 391, 56 S.W. 449, 48 L.R.A. 285; Ver-

din v. City of St. Louis, 131 Mo. 26, 33 S.W. 480, 36 S.W. 52.

We could cite many authorities showing that in other jurisdictions no such broad and liberal construction of the word "maintenance" has ever been given as has been done by the Supreme Court of Texas in relation to the use of such word in section 9 of article 8 of the Texas Constitution.

When it is made plain that every county in Texas has been provided with general laws through which they may lay out, and open and alter public roads, and that such laws are adequate to the purposes declared, there was no occasion for an amendment to the Constitution permitting the Legislature to pass local laws for the laying out, opening and altering of public roads by any county in any manner different from the existing general laws. And the Legislature did not submit any such intended amendment. The amendment as submitted touched only the matter of "maintenance," and the plain language used, without referring to *laying out, opening and altering roads,* shows a legislative intent that is not reasonably susceptible of the enlargement and construction heretofore given.

As a further evidence of the obvious intention of the Legislature in submitting the constitutional amendment on which the right to pass the bill under review, as a special or local law, depends, we call attention to the fact that the provisions relied upon are tacked on the end of section 9, and that section deals solely with the right to levy and the limitations upon levying taxes, and contains provisions covering taxes "for roads," limited to 15 cents on the $100.00 valuation, and provisions authorizing "an additional annual ad valorem tax to be levied and collected for the further *maintenance of the public roads,* if such tax be approved by a vote of the taxpaying voters, such tax not to exceed 15 cents on the $100.00 valuation." (Italics ours.) The subjects so dealt with are taxes "for roads" and taxes "for the further maintenance of public roads," two obviously distinct subjects. "Maintenance" is dealt with last, and the provisions relied upon follow, immediately, the language dealing with "maintenance."

The Legislature has used the word "maintenance" in its plain and commonly accepted meaning, and no other interpreta-

tion is reasonably justified, in the writer's opinion.

As to the Acts of the 44th Legislature being valid as a *local* road law, the case of Smith v. Grayson County, 18 Tex.Civ. App. 153, 44 S.W. 921, expressly approved by Mr. Justice Brown, of our Supreme Court, in Dallas County et al. v. Geo. H. Plowman, 99 Tex. 509, 91 S.W. 221, and the Dallas County Case, are not in point, for the obvious reason that the opinion in the Grayson County Case, as well as the opinion in the Dallas County Case, deals with a special road law, which was passed as such. In each instance the law attacked shows upon its face that it purports to be a local road law and intended as such, and nothing more.

In the suit before us, the law being attacked purports to be a general law. It was passed in the guise of a general law. It is begging the question to urge here that, while the Legislature attempted to enact a general law that names no county to which it is intended to apply, Tarrant County, to which it alone applies, may adopt it as its Local Road Law, passed solely and expressly for it.

Since these observations were made by the writer, the Commission of Appeals, in Bexar County v. Tynan et al., 97 S.W. (2d) 467 (opinion expressly adopted by the Supreme Court), condemned a law, similar in nature to the law before us, which contains an arbitrary, unreasonable and unjustifiable "classification" (as was done in the law before us), as unconstitutional and void.

The writer respectfully submits that for the reasons given the act before us is unconstitutional and void.