## J. D. GRANT v. HEIRS OF WALLIS.

### (Case No. 1364.)

1. VOID CONTRACT — COLONIAL GRANT.— An agreement was made in 1835, by which a colonist agreed to convey a portion of the headright league which might be granted to him as such in consideration that the other contracting party should defray all the expenses of removing him and his family to Texas and all expenses incident to procuring title from the government. *Held:*

   (1) That the agreement was violative of law and void.

   (2) Any ratification of such agreement prior to March 17, 1836, was also a nullity.

   (3) No right could be enforced under such contract on account of the procurement of a special relief act, under which the contracting party procured for the heirs of the deceased colonist the land. Such relief act will be regarded as a bounty by the state, unless it is shown that it was the recognition of a legal obligation from the government to the colonist.

APPEAL from Hill. Tried below before the Hon. D. M. Prendergast.

On December 30, 1861, Thos. R. King, as administrator of John Chamblee, deceased, brought this suit against the unknown heirs of Jonathan Wallis, deceased. The object of the suit was the specific performance of an agreement entered into between Wallis and Chamblee in the state of Alabama, October 8, 1835, to the effect that Chamblee was to defray the expenses of moving Wallis and his family to Texas; the latter was to settle in Robertson's colony, and locate his headright league of land in that colony; Chamblee was to select the land and pay all expenses in securing the title; Wallis was to select four hundred and forty acres out of any corner of the league, and convey the balance to Chamblee. It is alleged that this agreement was ratified by Wallis in writing, indorsed upon the bond after he arrived in Texas (which seems to be dat ed June 9, 1836). It is claimed that Chamblee performed his part of the agreement, and after Wallis' death secured the passage of a relief

act in behalf of his heirs, by virtue of which the certificate was issued; that he had it located, surveyed, etc., at his own expense, and that patent had issued for the land in 1857 to the heirs of Wallis. Subsequently King resigned his trust, and appellant was appointed administrator *de bonis non* of Chamblee's estate, who made himself party plaintiff and prosecuted the suit.

By amended petition he alleged that the date the ratification was made was not June 9, 1836, but it was Jan. or January 9, 1836.

The appellees answered by general demurrer, general denial and plea of not guilty. Also filed affidavit as to the forgery of the ratification indorsed on the agreement.

Verdict and judgment in favor of appellees. Numerous errors as to the exclusion of evidence and charges given and refused are assigned — unnecessary to mention in view of the opinion.

*Jo. Abbott* and *J. H. Bullock*, for appellants, cited: Stroud *v.* Springfield, 28 Tex., 649–663; Mapes *v.* Leal's Heirs, 27 Tex., 345, 349; Portis *v.* Hill, 30 Tex., 529, 561; Greenleaf, Ev., § 570; Allen *v.* Clark, 21 Tex., 404; Goldsmith *v.* Herndon, 33 Tex., 705, 711.

*Anderson & Flint*, for appellees.

WATTS, J. COM. APP.— It is settled law that an agreement for the conveyance of land in Texas made before the final title had issued, and prior to the adoption of the constitution of the republic, March 17, 1836, is a nullity, being made in violation of law. Holmes *v.* Johns, 56 Tex., 49, and authorities there cited.

The agreement upon which this suit is founded was made October 8, 1835, and was for the conveyance of land, the final title to which was thereafter to issue. It was, therefore, made in violation of law and not enforcible in the courts of the country.

As to the written ratification of that agreement, appellant alleges that it was made January 9, 1836. This allegation must be taken as correct as to the date when the ratification was made. And doubtless, as a matter of fact, that was the time at which it was made, for it appears from the record that Wallis died in the state of Alabama in May or June, 1836.

Thus considered the purported ratification was also made in violation of law and could in no way aid the illegal agreement or give it any virtue, force or vitality.

There are no such equities shown or asserted as would sustain the title of Chamblee against that of Wallis or his heirs. It does not

appear that he, or any one for him, ever had possession of the land, or at any time exercised ownership or control over it. On the contrary, it does appear that appellees protested against his right to the possession of the patent, and that they have exercised ownership and control over, and have had possession of, the land for a portion of the time since the patent issued. Atkinson *v.* Bell, 18 Tex., 479.

There is another view of the case which, it seems to us, is equally fatal to a recovery upon the part of appellant. That is, the certificate by virtue of which the land was secured is shown to have issued by virtue of a special act of the legislature, passed for the relief of Wallis' heirs. Neither the terms of the act nor the circumstances attending its passage are shown.

In Causici *v.* La Coste, 20 Tex., 285, it is in substance held that where a legislative grant is not made in discharge of some obligation of the government which the law would recognize, it would not, in a legal sense, be anything more than an act of sovereign grace and bounty upon the part of the legislature. And it matters not how meritorious the consideration that constitutes the moving cause for making the grant, if it is not such as the law would recognize, the grant is but a gift or donation.

If the heirs of Wallis had such rights to the certificate as would be recognized by law, the legislature had already furnished a general remedy through the land boards and courts, by which it could have been secured. It is not to be presumed that the legislature would have passed the relief act if any such right had existed; instead the parties would have been remitted to the tribunals furnished for the very purpose of passing upon such right; and had an adjudication been had adversely to the asserted right, that would have been conclusive against it.

The burden was upon appellant to show the facts that entitled him to a recovery, and among them it was necessary for him to establish that the relief act resulted from a legal obligation against the government.

These conclusions render it unnecessary to consider the various errors assigned, as no other result could have been reached than a verdict and judgment against appellant.

Our conclusion is that the judgment ought to be affirmed.

AFFIRMED.

[Opinion adopted November 20, 1883.]