**BROWNFIELD et al. v. TONGATE et al.**

**No. 4791.**

Court of Civil Appeals of Texas. Amarillo.

Sept. 20, 1937.

Wilson, Randal & Kilpatrick, of Lubbock, for appellants.

R. L. Graves, of Brownfield, and McWhorter & Howard, of Lubbock, for appellees.

JACKSON, Chief Justice.

The record shows that the Red Onion Common School District was organized not later than the year 1917 and is composed of approximately 31½ sections of land all situated in Terry County, Tex. The existence of said district continued without any change in the boundaries thereof until August 6, 1935, on which date an attempt was made to detach 13 sections therefrom and attach said sections to the Union Independent School District of Terry County, Tex.

When the Red Onion School District was organized, all of the 31½ sections belong-

ed to M. V. Brownfield and were used for grazing purposes. The record indicates that no trustees were ever appointed, elected, or served in said district, and it is conceded that said district had no property, money, or taxes, current or delinquent; that no school had been conducted therein for a period of five years prior to August 6, 1935, and fewer than ten children within the scholastic age resided in said district for the five years preceding said date; that the lands comprising the district are used almost entirely for grazing purposes, and the foreman of the ranch with his wife lives at the headquarters, and there were two or three families besides who resided in the district.

The Union Independent School District is situated in Terry County, duly organized, has school property, operates a public free school, has regularly elected and acting trustees, and owes a bonded indebtedness of $13,500, and the territory thereof is adjacent to the Red Onion School District. The trustees of the Union Independent School District made application to the duly elected qualified and acting County Board of School Trustees of Terry County to detach 13 sections of land from the Red Onion School District and attach such sections to the Union Independent School District, and, pursuant thereto, the County Board of School Trustees on August 6, 1935, considered such application, and by order granted the petition, and on September 2, 1935, thereafter, said order was amended by the County Board of School Trustees, and made sufficient, if valid, to detach the 13 sections from the Red Onion Common School District and attach them to the Union Independent School District.

On August 10, 1935, A. D. Brownfield, A. M. Brownfield, A. R. Brownfield, and Mrs. Effie B. Wilson, joined by her husband, Roscoe Wilson, as plaintiffs, instituted this action against the appellees, who constituted members of the County Board of School Trustees of Terry County, of whom O. K. Tongate was president, and also against the trustees of the Union Independent School District in their individual and official capacities, alleging the suit was brought as an original action against the defendants and also as an appeal from the order of the County School Board, and asked judgment decreeing the cancellation of such purported orders because void and illegal, and sought an injunction against said defendants restraining them perma-

nently from putting into force and effect such orders.

The defendants urged as a defense the order made by the County School Board on August 6, 1935 and the amendment thereof on September 2d, thereafter; pleaded that such orders were valid and made for the best interest of the scholastics in the Red Onion School District, and also urged that the action of the County School Board of Terry County in detaching the 13 sections from the Red Onion School District and attaching said sections to the Union Independent School District had been validated by an act passed at the Second Called Session of the Forty-Fourth Legislature 1935, Senate Bill No. 19, chapter 460, page 1756 (Vernon's Ann.Civ.St. art. 2742f note).

On September 4, 1936, the plaintiff suggested to the court the death of Roscoe Wilson, who was the husband of Mrs. Effie B. Wilson, now a widow, and the other plaintiffs were permitted to prosecute the suit in their own names. None of the plaintiffs were resident citizens of either school district.

Thereafter, the case was heard on its merits, and at a regular term of the court, on September 18, 1936, judgment was entered that the plaintiffs take nothing by this suit and the defendants go hence with their costs.

The validating act pleaded by appellees became effective November 14, 1935, and section 1 (article 2742f note) is as follows: "That all acts of any county board of school trustees in any county in the State of Texas with a population of not less than eight thousand eight hundred (8,800) and not more than eight thousand nine hundred and fifty (8,950), according to the last preceding Federal Census in laying out or attempting to establish, combine, abolish or change any independent or common school district in the county over which such county board of school trustees has jurisdiction, under and by virtue of Chapter 339, Acts Regular Session, Forty-fourth Legislature, 1935 (art. 2742f), or under Chapter 151, Acts Regular Session, Forty-fourth Legislature, 1935 (art. 2742m), are hereby in all things ratified, confirmed and validated, and that all elections held in any such county for the purpose of laying out, establishing, combining, abolishing or changing any such independent or common school district are also in all things ratified, confirmed and validated."

■ It will be observed that the provisions of the validating act limit its application to any county with a population of not less than 8,800 and not more than 8,950, according to the last preceding Federal Census, which referred, necessarily, to the Federal Census of 1930, an examination of which shows that Terry County had a population of 8,833, and, with the exception of Dimmitt County which had a population of 8,828, was the only county to which the act could apply. Under the authorities in this State it is apparently settled that a classification of counties, cities, or school districts based on population, in order to be valid, must not exclude the counties, cities, and school districts from the classification made which thereafter acquire the specified population.

■ Lewis' Sutherland, Statutory Construction (2d Ed.) 397 et seq., and notes, is as follows: "A classification based upon existing or past conditions or facts and which would exclude the persons, places, things or objects thereafter coming into the same situation or condition, is special and void. Thus a classification of cities or counties based upon existing population or upon the population shown by specified census is of this character." This, as we understand it, is the law announced in City of Fort Worth v. Bobbitt (Tex.Com.App.) 36 S.W.(2d) 470; Bexar County v. Tynan et al. (Tex.Civ.App.) 69 S.W.(2d) 193, affirmed (Tex.Com.App.) 97 S.W.(2d) 467.

■ Since under its provisions this act applied to Dimmitt and Terry Counties only and could never have affected any others, we conclude that Senate Bill No. 19 was a local law. The Legislature is permitted to provide for the formation of school districts by general laws only, Const. art. 7, § 3, and not by special laws, hence we are of the opinion that the Legislature was without authority to validate the order of the School Board of Terry County by such special act. Fritter, County Judge, et al. v. West et al. (Tex.Civ.App.) 65 S.W. (2d) 414.

■ The appellant challenges the action of the board in detaching the 13 sections from the Red Onion School District and attaching said territory to the Union Independent School District, asserting that article 2742m, Vernon's Ann.Civ.St., under which the order was entered, is unconstitutional since it delegates to the county school board the authority vested in the Legislature.

Article 2741, R.S., gives to the commissioners' court authority to subdivide their respective counties into common school districts, and among other things provides: "Said courts may reduce the area of any common school district, create additional school districts, consolidate two or more adjacent districts, or subdivide any school district, if necessary for the interest of the school children; provided, no school district shall be established so as to contain less than nine square miles of territory."

Article 2681, R.S., among other things provides: "The county school trustees are authorized to exercise the authority heretofore vested in the commissioners court with respect to subdividing the county into school districts, and making changes in school district lines."

Article 2729a, Vernon's Ann.Civ.St., provides that: "The county school trustees of any organized county are authorized to exercise the authority heretofore vested in the Commissioners' Court with respect to subdividing the county into school districts and making changes in school district lines."

Article 2742m, Vernon's Ann.Civ.St., reads as follows: "That from and after the passage of this Act the County Board of School Trustees in any county in this State shall have authority and full power to abolish and/or subdivide any common school district, or other district coming under the jurisdiction of said County Board, having fewer than ten (10) resident scholastics within its boundaries, provided that no public school has been conducted in such district for a period of five (5) years immediately preceding such action by said County Board of School Trustees. The territory of any such school district so abolished or subdivided shall be attached to any or all contiguous school districts in such manner as may be determined by said County Board. It is further provided that said County School Board shall make an adjustment of any outstanding bonded indebtedness, if there be such, and provide for an equitable distribution of all district properties and/or moneys between the districts affected and the territory so divided, detached or added, taking into consideration the value of school properties and the taxable wealth of the districts affected and the territories so divided, detached or add-

ed, as the case may be. When said County Board shall have arrived at a satisfactory basis of such an adjustment, it shall have power to make such orders with reference thereto as shall be conclusive and binding upon the districts so affected; provided, however, that the trustees or any residents of the districts or territory so affected by the act of the County Board of Trustees as authorized by this Act may appeal from the decision of the County Board to the District Court."

The authority delegated to the commissioners' court by article 2741, the exercise of which has often been sustained, is equally as comprehensive as the authority vested in the County School Trustees by article 2742m, and appellants' contention that said article is unconstitutional is overruled. McLaughlin et al. v. Smith et al., 105 Tex. 330, 148 S.W. 288; Plemons Independent School Dist. et al. v. Stinnett Independent School Dist. et al. (Tex.Civ. App.) 46 S.W.(2d) 734, affirmed (Tex.Com. App.) 59 S.W.(2d) 812.

The appellant presents as error the action of the court in sustaining the validity of the order of the County Board of School Trustees, contending that, if article 2742m is not unconstitutional, it must be construed together with article 2742f, and, since the appellees made no effort to comply with the procedure provided in the last-named article, their order was void.

■ An examination of article 2742f discloses that the provisions thereof authorize the County Board of Trustees to detach territory from school districts, and such territory is "to be incorporated into a new common school or independent school district;" that from the territory so detached no district shall be "created with an area of less than nine (9) square miles," etc.; that "any school district created under the provisions of this Act," etc.; that at the time an order is made for the creation of a district the County Board of Trustees shall appoint a board of trustees for the school district organized from the detached territory.

The object, purpose, and intention of the Legislature in passing this act, as manifested by the language therein, is obviously to empower the County School Board to create and incorporate new school districts from territory detached from contiguous districts and the procedure to be followed to make valid such an order is prescribed in detail.

■ Article 2742m authorizes the County Board of School Trustees to abolish or subdivide the territory of common school districts in which no public school has been conducted for the preceding five years, and which had fewer than ten scholastic pupils for such period immediately preceding said order to detach the territory from one school district and attach it to another. Neither of the articles under investigation is ambiguous; each is complete within itself; and each authorizes the board to exercise under different circumstances and distinctly different conditions jurisdiction over school districts in its county as therein provided. In our opinion, article 2742m does not require the school board, in order to exercise the authority therein contained, to comply with the procedure in article 2742f. It would be difficult to think of an example that would illustrate more forcibly than the instant case the untenableness of appellants' position. There were no trustees of the Red Onion Common School District upon whom written notice of the contemplated order could have been served. Since no new district was to be organized, no trustees could have been appointed therefor; no election therein could have been had; and no metes and bounds thereof could have been stated. The record shows that at the time of the organization of the Red Onion School District M. V. Brownfield then and during his lifetime, and the plaintiffs, who are his children, since that time, have undertaken to find an opportunity to sell and colonize in small tracts the land in said district to farmers who might have children, so when the need arose a school could be maintained therein. The motives actuating the formation of said district are not questioned. It may be conceded that they were commendable, nevertheless the creation of said district has relieved the land and property therein from school taxes for a period of eighteen years.

■ The record discloses that the County School Board substantially complied with the law in making the order involved in this suit except to adjust the equities, if any existed, between the two districts. This failure, however, would not render the order invalid, since any adjustment necessitated under the facts may be made at a date subsequent to the order. Prosper

Independent School District et al. v. Collin County School Trustees et al. (Tex. Civ.App.) 51 S.W.(2d) 748, affirmed (Tex. Com.App.) 58 S.W.(2d) 5.

The judgment is affirmed.