### WOOD et al. v. MARFA INDEPENDENT SCHOOL DIST.

No. 3753.

Court of Civil Appeals of Texas. El Paso.

Nov. 23, 1938.

Rehearing Denied Jan. 5, 1939.

C. W. Croom, of El Paso, and E. B. O'Quinn, of Marfa, for appellants.

S. J. Isaacks, of El Paso, amicus curiæ.

Mead & Metcalfe, of Marfa, for appellee.

NEALON, Chief Justice.

The Marfa Independent School District, which, as its name implies, is a municipal corporation, brought suit against the defendants, S. T. Wood and Doran Wood, seeking judgment for taxes alleged to be due for the years 1934, 1935 and 1936, together with a foreclosure of plaintiff's alleged statutory and constitutional tax liens. The petition alleged that the property upon which the lien was sought was situated within the confines of said Independent School District and of Presidio County; that the tax was levied by proper ordinance under proper authority in compliance with statutory and constitutional provisions; and that the limits and boundaries of the school district were in accordance with an order theretofore entered by the County Board of Trustees of Presidio County, Texas, on December 12, 1933.

Defendants pleaded and now contend that their property against which taxes were sought to be foreclosed was not and is not situated within said district; that on December 12, 1933 plaintiff attempted to attach and annex certain territory which included said lands, but that the action of the County Board in this respect was null and void because the statutory requirements were not complied with, in that no notice was given as required by law and no petition of the voters of said district or the property owners in the territory sought to be annexed was had, and because no map and plan showing the boundaries of the district affected and of the proposed new district were made or caused to be made prior to the attempted annexation, and because all parties interested, including the defendants, were not given a full opportunity to be heard; and that the action of said board as of December 12, 1933 in so attempting to annex said territory was rescinded by the County Board of Trustees on January 27, 1934, prior to any attempted levy of taxes involved in the suit. By way of cross-action defendants pleaded the alleged illegality of the taxes sought to be recovered and the alleged illegality of the attempted formation of the plaintiff district and prayed that the alleged taxes be cancelled, and that "the formation or attempted formation by said

plaintiff district be by the court declared null and void, and 'that plaintiff be adjudged not to be entitled to taxes, past or future, from defendants by virtue of the alleged attempted formation of said district."

The cause was tried before the court without the intervention of a jury and judgment entered in favor of defendants (appellants here) as to the claim for taxes ·sought to be collected for the years 1934 and 1935, upon the ground that no valid levy had been made. Judgment was entered against appellants for the taxes for the year 1936 and a foreclosure of the tax lien decreed. · From the action of the court in rendering judgment against them for 1936 taxes this appeal is prosecuted.

At the request of appellants the trial .court filed findings of fact and conclusions of law. It found, among other facts, that beginning December ·12, 1933, and thereafter at all times, plaintiff exercised corporate control over the territory here involved; that on December 12, 1933 the County Board of Trustees of Presidio ·County undertook to rearrange the lines ·of the Marfa Independent School District and in such proceedings complied with all the provisions of law applicable thereto except that it did not show boundaries of common school districts· affected; that beginning with December 12, 1933, plaintiff assumed control over said territory, assessing and collecting taxes therein; providing ·schools and paying teachers therefor from the State per capita tax and from maintenance tax on the entire district, including said added territory; that no litigation bringing any of said acts into question was had prior to January 25, 1937; that ·taxes for 1934 and 1935 had been levied by motion and order and not by ordinance; that taxes for 1936 had been duly levied by ordinance based upon election theretofore held authorizing the levy of a maintenance tax not exceeding $1 on the hundred dollar valuation; that there was $264.13 taxes due and unpaid on the lands described which had been duly levied upon proper assessment; that on January 27, 1934, the County Board of Trustees sought to rescind the order of December 12, 1933, but none of the requirements for rearranging the district were had by such trustees; that after the order of December 12, 1933, the district, as enlarged, had been ·continuously recognized by State and County authorities as a school district and that prior to January 25, 1937, neither the

formation of the district, nor its tax levy or assessment had been involved in any litigation or contest.

## Opinion.

In attempting to annex appellants' land to Marfa Independent School District, the County Board of Trustees acted under powers which it assumed had been granted it by the Acts of the 43d Legislature, 1st Called Sess., Chap. 108, p. 293, which appears in Vernon's Annotated Statutes as Art. 2742c. No question is made as to this being the authority that the Board invoked. That act provides that "It shall be the duty of the County Board of Trustees of the public schools in every county in this State, having an area of not more than three thousand eight hundred (3,800) square miles and not less than three thousand six hundred (3,600) square miles and a population of not less than nine thousand and not .more than twelve thousand, according to the last preceding Federal Census, as soon as may be after this Act shall take effect, to rearrange and resubdivide all the territory of their respective counties into such number ,of convenient school districts as it shall deem advisable and designate them by number." Vernon's Ann.Civ.St. art. 2742c, § 1. The trial court made a finding of fact to the effect that on December 12, 1933, Presidio County had an area of 3787 square miles and a population of 10,154, according to the Federal Census of 1930, "being the last Federal Census immediately preceding December, 1933." Upon oral argument on appeal amicus .curiæ urged that the action of the County Board of Trustees was ineffective, in that it was taken under a legislative act that could apply to but one county in the State, and which, therefore, was a special law. Sec. 3 of Art. 7 of the State Constitution as amended in 1926, Vernon's Ann. Civ.St., provides that "the Legislature may also provide for the formation of school districts by general laws." Prior to the amendment of the Constitution in this particular the legislature might have provided for the formation of school districts by special laws. This amendment destroyed the exception to the limitation which· Article 3, Sec. 56 of the State Constitution, Vernon's Ann.Civ.St., placed upon the power of the legislature forbidding the passage of local or special laws regulating the affairs of school districts. It is urged, therefore, that the act in question was unconstitutional (Constitution, Art. 3, Sec.

**432**

56), and that as the legislature had no power to enact this legislation originally, it could not validate the action of the Board had in pursuance of the attempted grant of authority. This last stated proposition was urged in view of the contention of appellee that if the act of the County Board was originally irregular in any respect, it was validated by that portion of Chap. 380 of the Acts of the 44th Legislature, 1st Called Sess. p. 1555, which appears in Vernon's Annotated Statutes as Art. 2815g—8, which validates the school districts created by general or special law in this State under certain circumstances, and validates acts of the boards in rearranging, changing or subdividing, districts or increasing or decreasing their area.

After submission, in view of the fact that the constitutionality of the act was not challenged either in the district court or in the briefs filed in this Court by the parties to the cause, this Court requested counsel for the various parties, as well as amicus curiæ, to submit further briefs and written argument treating of the questions thus raised, as well as of the Court's duty in the premises in respect to giving consideration to the question when raised for the first time upon appeal. We have had the advantage of excellent briefs from all parties.

■ We have come to the conclusion that the legislation under which the County Board of Trustees assumed to act was unconstitutional, and that it is our duty to consider the question. We think our duty is the same that would devolve upon the Supreme Court in a like situation. That Court, in Gohlman, Lester & Co. v. Whittle, 114 Tex. 548, 273 S.W. 808, in passing upon the constitutionality of legislation that sought to attach the character of separate property to rents derived from separate property, said [page 812],

"We are not precluded from declaring the true status of the rents by reason of the fact that defendants in error in the courts below may not have attacked the validity of the provision of the statutes which purports to make rents of the wife's separate lands a part of her separate estate. The court could not perform its duty to enforce the paramount law did it not refuse to give effect to a statute in conflict with the Constitution. So the court will always adjudicate whether a statute is constitutional, if it is necessary to the decision of a case, regardless of when or how the question is raised. Hopson v. Murphy, 1 Tex. [314] 315; Terrell v. Middleton, 108 Tex. [14] 19, 191 S.W. 1138, 193 S.W. 139; Barnes v. State, 75 Tex.Cr.R. 188, 170 S. W. [548] 550, L.R.A.1915C, 101, 109; Cooley's Constitutional Limitations, pp. 228, 229."

In this case, if we are to make a decision that shall be truly determinative of the rights of the parties under the facts presented, we must pass upon the constitutionality of the statute invoked, even though the question was not raised until oral argument upon appeal.

■ We take judicial notice that no other county in Texas has the qualifications of area and population demanded by the statute. Only one other county in Texas, to-wit, Culberson County, can qualify as to area. That county, however, according to the 1930 census, had a population of only 1228. In thus making a class which at the time contained only one county and foreshadowed a probability that it would never contain more than two, and then only if and when the population of Culberson County should increase seven-fold, the legislature did not make a classification based upon a real distinction. Possibly the result might have been different if there had been no minimum limit of population and no maximum limit as to area, since there would have been present the factors of furnishing educational opportunities to all children in a sparsely populated territory of large dimensions and an equalization of the tax burden by spreading it over all property in the area affected, and the class thus constituted might have a problem quite different from other classes of districts. This situation however is not presented, and we express no opinion as to the possible validity of such a classification. It is sufficient to say here that when we look to the practical operation of the act, we are led to the conclusion that beyond doubt it was the purpose of the legislature to single out Presidio County and make the act applicable to that county alone. Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467. For that reason the act is a local act and one which it was beyond power of the legislature to enact. Vernon's Ann.Civ.St. Texas Constitution, Art. 3, Sec. 56; Brownfield v. Tongate, Tex.Civ.App., 109 S.W.2d 352; City of Ft. Worth v. Bobbitt, Tex.Com.App., 36 S.W.2d 470; Fritter v. West, Tex.Civ.App., 65 S.W.2d 414;

Austin Bros. v. Patton, Tex.Com.App., 288 S.W. 182; Smith v. State, 120 Tex. Cr.R. 431, 49 S.W.2d 739.

█ Since from what has been said it appears that the legislature did not have the power or authority to authorize the acts of the Board that are complained of, it follows necessarily that it has not the power to validate these acts. A complete reply to the proposition that these acts have been validated by Art. 2815g—8 may be found in contemplating the necessary results of the holding thus sought. If the last named article is effective to validate these acts of the County Board of School Trustees, then it is possible for the legislature to exceed its constitutional authority in making a grant of power to a school board, and then set aside the expressed will of the people as reflected by the constitutional provision by making lawful that which the Constitution declares shall be unlawful. The legislature had not the initial power to authorize the action of the Board. It therefore had not the power to validate or ratify that action. Armstrong v. Walker, 123 Tex. 508, 73 S.W. 2d 520. In fact the language of Article 2815g—8 does not purport to validate action taken under an invalid grant of power.

From what has been said it follows that the judgment of the lower court must be reversed and judgment here rendered in favor of appellants upon the action of appellee and the cross-action of appellants.

It is unnecessary to discuss the other questions raised by appellants' assignments of error. We think the evidence was sufficient to warrant the court's conclusion that substantial compliance with Art. 2742c was had, and that such irregularities as appeared would have been validated by the legislation referred to as Art. 2815g—8, had the legislature possessed the power originally to authorize the Board's action. We think further the court was correct in concluding that were Art. 2742c a valid enactment, the attempted rescission of the order of the Board annexing the territory in question would have been ineffective for want of the notice required by Art. 2742c.

There is no merit in the contention that the validating act, if effective, would have applied to the order of rescission and have constituted a validation of the district restored to its first dimensions, since it does not appear that the district so diminished was recognized by either state or county

authorities. It appears also in this connection that subsequent to the order annexing the additional territory and prior to the attempted resolution of rescission, the Board of Trustees of the Marfa Independent School District passed a resolution consenting to and approving the annexation of the territory in question and so notified the chairman of the County Board of Trustees.

In accordance with the views herein expressed, the judgment of the trial court is reversed and judgment here rendered in favor of appellants.

Reversed and rendered.

## On Rehearing.

While appellee's motion for rehearing was pending the decision of the Texarkana Court of Civil Appeals in Watson et al. v. Sabine Royalty Corporation, 120 S.W.2d 938, appeared, and writ of error was refused by the Supreme Court. Appellee insists that our decision is in conflict with the views there expressed, and approved by the Supreme Court by the refusal of the writ. We think not. The act under consideration in Watson v. Sabine Royalty Corporation, supra, was applicable to counties having a population of not less than 20,000 nor more than 32,500 and taxable property values of not less than $75,000,000. The Court found that there were forty-two counties which possessed the qualification as to population, but only Rusk County possessed both qualifications. The emergency clause reveals the reason for the classification, which was the necessity of meeting a condition resulting from the development of the oil properties within several counties. Oil development within the county but outside of certain school districts increased school attendance within in the districts without increasing taxable values within them. This condition resulted only when population increased, and the difficulty arose only when values were increased outside of the affected school districts but not within them. There was therefore a reasonable relation between the classification, and the needs of the one county then within the classification and others that might come within it within a reasonable time as a result of the exploitation of their oil possibilities. On the other hand, the only other county that could qualify as to area under the act we are considering is one in which the people depend most largely upon the breeding and

434

raising of livestock. The character of the land like that of Presidio County calls for large unimproved tracts. Population grows slowly. In fact in the decade between 1920 and 1930 the increase in Culberson County was but 318. At the same rate of increase more than twenty years would elapse before Culberson County could meet the population requirement. Appellee calls our attention to the emergency clause, urging that it shows that the Legislature considered the classification. The language of that clause confirms us in the view at which we arrived reluctantly: that the Legislature intended the Act to be applicable to but one county, for the sole emergency is thus stated, "the fact that there is no adequate provision under existing law for the subdivision of counties having an area of not more than three thousand eight hundred (3,800) square miles and not less than three thousand six hundred (3,600) square miles and a population of not less than nine thousand eight hundred (9,800) and not more than twelve thousand (12,000) inhabitants, according to the last preceding Federal Census, into school districts having sufficient scholastic population to support or justify proper elementary and high school facilities constitutes an emergency and an imperative public necessity." Acts 1933, 1st Called Sess., c. 108, p. 293, § 14. It would indeed have been difficult to designate Presidio County more definitely and distinguish it more clearly from all other counties in the State.

We recognize the principle that if the question of the reasonableness of the classification were debatable, the judgment of the Legislature would be final, but we may not close our eyes to what is clear to all men. For a discussion of the reasonableness of a classification when there is little probability that a second county will ever come within the newly-created class, see the concurring opinion of Mr. Justice Brown in Shannon et ux. v. Tarrant County, Tex.Civ.App., 99 S.W.2d 964, at page 972. The attempted classification does not meet the test that it should inhere in the subject matter and be natural and not artificial or illusory. Leonard v. Road Maintenance District No. 1, 187 Ark. 599, 61 S.W.2d 70, cited by the Commission of Appeals in Bexar County v. Tynan, 128 Tex. 223, 97 S.W.2d 467. It is apparent that it operates unequally upon counties between which there is no real difference to justify the separate treatment of them undertaken by the Legislature. In re Elm Street in City of New York, 246 N.Y. 72, 158 N.E. 24. As said by Justice Cardozo in the case just cited [page 26], "We close our eyes to realities if we do not see in this act the marks of legislation that is special and local in terms and in effect." That learned jurist, in the course of the discussion, said: "Roughly speaking, however, the principle of division, considered merely for the purpose of a working approximation, may be stated to be this: If the class in its formation is so unnatural and wayward that only by the rarest coincidence can the range of its extension include more than one locality, and at best but two or three, the act so hedged and circumscribed is local in effect. If the same limits are apparent upon the face of the act, unaided by extrinsic evidence, or are so notorious or obvious as to be the subject of judicial notice, it is also local in its terms." See discussions in Alexander v. Elizabeth, 56 N.J.L. 71, 28 A. 51, 23 L.R.A. 525; Medders v. Stewart, 172 Ga. 507, 158 S.E. 56; Town of Longview v. Crawfordsville, 164 Ind. 117, 73 N.E. 78, 68 L.R.A. 622, 3 Ann.Cas. 496.

The contention of appellee that the Court may not take judicial notice of the areas of Texas counties is unsound. Courts take judicial notice of that which is apparent to persons of intelligence. They take judicial notice of the location of the geographical features, of boundaries (Hoefs v. Short, 114 Tex. 501, 273 S.W. 785, 40 A.L.R. 833), of rivers as boundaries, and of distances (Giddings v. Day, 84 Tex. 605, 19 S.W. 682, Fidelity & Casualty Co. v. Branton, Tex.Civ.App., 70 S.W.2d 780), of the fact that two certain railroads are competing lines (Gulf, C. & S. F. Ry. Co. v. State, 72 Tex. 404, 10 S.W. 81, 1 L.R.A. 849, 13 Am.St.Rep. 815), and of the approximate distances between counties. The approximate areas of Texas counties may be learned with readiness from many sources. There are maps, official and unofficial, bringing this information to the attention of those interested. It is published in the 1930 Federal Census Reports, which we checked carefully before preparing our former opinion. That there may be slight changes in area resulting from erosion on the one hand or accretion upon the other or from errors of surveyors may be admitted, without affecting the right and duty of the Court to take notice of the areas which would not be placed in other classes by such slight differences.

■ Appellee's objection that a taxpayer may not raise the question of the validity of the annexation proceeding in this character of suit is met by the opinion of the Supreme Court in Parks v. West, 102 Tex. 11, 111. S.W. 726, and by the opinion of the Commission of Appeals in Burns v. Dilley County Line Independent School District, 295 S.W. 1091.

The motion for rehearing is overruled.