



# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

May 31, 1939

Honorable T. M. Trimble
First Assistant State Superintendent
Austin, Texas

Dear Sir:

Opinion No. O-762
Re: Educating children of
Methodist Orphanage of Waco
in the schools of the Waco
Independent School District.

We are in receipt of your letter of May 4, 1939, in which you submit the letter of Mr. A. H. Brister, Superintendent of Waco Schools and request our opinion upon the question therein presented.

Mr. Brister's letter states in part as follows:

"The Methodist Orphanage of Waco has some 350 school children and they are located within the city limits of Waco. They have been sending their high school children to our high school after the completion of the eighth grade. I understand that they are considering hereafter turning their equipment and children over to the public schools of Waco for school purposes, throwing the whole responsibility on the Independent School District of Waco. I would like to know if this can legally be done."

We understand that the principal question which you wish to have determined is whether the Waco Independent School District can be required to accept the children living at the Methodist Orphanage in the Waco schools.

It has been called to our attention that on April 12, 1937, the county board of school trustees of McLennan County attempted to create an independent school district out of the Methodist Home territory in Waco by resolution.

We have been unable to find any statute authorizing a county board of school trustees to create an independent school district as distinguished from the incorporation of a then exist-



ing common school district except Article 2742f, which requires a vote of the original district to be divided, a vote in the district to be created to assume a proportionate part of the indebtedness of the original district and also requires a validating act by the Legislature before such independent district shall be valid. It further provides that a district shall not be created containing less than nine square miles. No showing has been made that there was any attempt to comply with the provisions of Article 2742f, but we will assume that any validating act passed by the Legislature and applicable to the action of the county board of trustees in this instance would validate such action whether the provisions of Article 2742f were complied with or not.

Acts 1937, 45th Legislature, House Bill 1091, Ch. 285, p. 575 (now codified as Article 2815g-11) provides as follows:

"An Act validating the creation and organization of independent school districts; validating the actions of any County Board of Trustees with reference to the creation of school districts out of another independent school district; making this Act applicable to certain counties according to the last preceding Federal Census; providing that no part of this Act shall affect any litigation now pending, and that only acts passed by four-fifths majority of the County Board of Trustees shall be valid, and declaring an emergency.

BE IT ENACTED BY THE LEGISLATURE OF THE STATE OF TEXAS:

"Section 1. That the actions of any County Board of Trustees in this State for the purpose of creating independent school districts are hereby in all things validated as though they had been duly and legally established in the first instance.

"Sec. 1a. This Act shall apply only to those counties having a population of ninety-eight thousand (98,000) to one hundred thousand (100,000), according to the last preceding Federal Census, and that no part of this Act shall affect any litigation of any district now pending.

"Sec. 1b. The acts of the County Board of Trustees shall not be valid except those acts that are passed by four-fifths majority of the Board itself.



An examination of the Federal Census of Texas counties as published in Texas Almanac 1939-40 discloses that the only county in Texas having a population withinthe brackets in the above statute is McLennan County which had a population in 1930 of 98,682. It is interesting to note that the Census reports of 1920, 1910, 1900 and 1890 as published in the Texas Almanac does not show that any other county in this State has ever had a population between 98,000 and 100,000 except McLennan County.

It is well established that when a law is so drawn that it applies only to one county, and can never apply to any but this one county in any possible event, the law is special and not general although enacted in the form of a general law. City of Ft. Worth v. Bobbitt (Com. of App. 1931) 36 S. W. (2d) 470; Bexar County v. Tynan (T.C.A. 1934) 69 S. W. (2d) 193. Ordinarily curative statutes are by their very nature intended to act upon past transactions and are therefore wholly retroactive. Hunt County v. Rains County (T.C.A. 1925) 7 S. W. (2d) 648. Since H. B. 1091 can only apply retroactively no other county can ever come under its terms, and it is therefore a special act. Such was the holding of the Court of Civil Appeals in Brownfield v. Tongate (1937) 109 S. W. (2d) 352, with reference to a similar validating act.

The Legislature is without authority to create a school district by special law and is therefore without authority to validate an order of a county school board creating a school district by a special act. Const. Art. 7, Sec. 3; Const. Art. 3, Sec. 56; Fritter v. West (T.C.A.) 65 S. W. (2d) 414; Brownfield vs. Tongate (T.C.A. 1937) 109 S. W. (2d) 352; Wood v. Marfa Independent School District (T.C.A. 1938) 123 S. W. (2d) 429.

Under the well established authorities of this State, we have concluded that the action of the county board of school trustees of McLennan County in creating the Methodist Orphanage into an Independent School District was without authority in law and therefore void, and the action of the Legislature in attempting to validate such act is unconstitutional and therefore void.

Article 2901, Revised Civil Statutes, 1925, provides as follows:

"Every child in this State of scholastic age shall be permitted to attend the public free schools of the district or independent district in which it resides at the time it applies for admission, notwithstanding that it has been enumerated elsewhere, or may have attended school elsewhere part of the year."

Hon. T. M. Trimble, May 31, 1939, Page 4


Other statutes provide that all children of scholastic age shall be enumerated in the scholastic census in the district in which they reside, and we are informed that the children of the Methodist Orphanage in Waco have heretofore been enumerated as residing in the Waco Independent School District except for the school year 1938-39.

We have been unable to find any cases in Texas passing upon the question of whether a child living in an orphans home is a resident of the school district in which the home is located. Other jurisdictions have made distinctions depending upon whether the institution or orphans home caring for the children is maintained by the State or receives an appropriation from the State for that purpose. We do not understand that such is the case with reference to the Methodist Orphanage in Waco.

We think the weight of authority and better rule is that children living in an orphans home within the limits of a school district are residents of that district so as to entitle them to the benefit of a public free school education in the schools of such district. Such was the holding in Wirtz vs. Board of Education of Jefferson County (Ky. 1935) 90 S. W. (2d) 62; Grand Lodge IOOF of W. Va. v. Board of Education of Independent School District of Elgin, (1922) 90 W. Va. 8, 110 S. E. 440, 38 A.L.R. 1092, Anno. 1098; Crain vs. Walker (Ky. 1928) 2 S. W. (2d) 654; Salem Ind. Sch. Dist. vs. Kiel (Iowa 1928) 221 N.W. 519; Ashby v. Board of Education (Sup. Ct. Ill. 1915) 114 H. E. 20; Logsdon v. Jones (Sup. Ct. Ill. 1924) 143 N. E. 56. It is not material that the property of the home may be exempt from taxation. Grand Lodge IOOF of W. Va. vs. Board of Education of Ind. Sch. Dist. of Elkins (1922) 90 W. Va. 8, 110 S. E. 440, 48 A.L.R. 1092; Logston v. Jones, 133 N.E. 56.

No facts have been presented whereby we might determine just how it is contemplated that the equipment referred to in your letter is to be turned over to the Waco Independent School District or what arrangement or agreement may be under consideration by the board of trustees. We, therefore, express no opinion upon this phase of your question.

We are of the opinion that the inmates of the Methodist Orphanage in Waco reside in the Waco Independent School District and such children as residents are entitled to receive a public free school education in the schools maintained by the Waco Independent School District.

Yours very truly

CCC:N

APPROVED

ATTORNEY GENERAL OF TEXAS

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN

Cecil C. Cammack
Assistant