

# THE ATTORNEY GENERAL

## OF TEXAS

Gerald C. Mann

~~PRICE DANIEL~~

ATTORNEY GENERAL

AUSTIN 11, TEXAS

*Superseded by Art 29L VCS*

Honorable T. M. Trimble, First Assistant
State Superintendent of Public Instruction
Austin, Texas

Dear Sir:

Opinion No. O-3123
Re: Effect of county passing out of
population bracket classification
by subsequent Federal Census, and
application to Gaines County under
S. B. No. 442, Acts 46th Leg.

We are in receipt of your letter of February 4,
1941, requesting an opinion by this department as follows:

"'S. B. No. 442 of the Forty-sixth Legis-
lature creates county-wide equalization school
districts ~~eef~~ for tax purposes. All counties hav-
ing a population of not more than 2,850 accord-
ing to the last preceding Federal Census. . . .'

"This Act applies to Gaines County. Follow-
ing the provisions of the above mentioned statute,
a county-wide equalization tax has been voted in
Gaines County. Since that time the County has
gone out of the population bracket set forth in
S. B. No. 442. It is the desire of the people
of Gaines County to know if the tax which was
voted under the provisions of the above mention-
ed statute will continue in force, even though
the Federal Census of 1940 shows a change in
population, and Gaines County does not come with-
in the population bracket set up in this Act."

The Act to which you refer, S.B. No. 442, Acts
Forty-sixth Legislature, Regular Session, Special Laws,
p. 673, Ch. 34, appears in Vernon's Texas Civil Statutes,
Pocket Part, as Article 2744e-2. We quote only the first
section of the Act:

"Section 1. All counties in this State
having a population of not less than twenty-seven
hundred seventy-five (2,775) and not more than
twney-eight hundred fifty (2,850), according
to the last preceding Federal Census, and contain-
ing a valuation of Seven Million ($7,000,000.00)
Dollars or more, are hereby created into County-
wide Equalization School Districts for tax pur-
poses, and each such county shall have the county
unit system of education to the extent specified
in this Act and may exercise the taxing power
conferred on school districts by Article 7, Sec-
tion 3, of the Constitution, to the extent here-

inafter provided, but such taxing power shall
not be exercised until andunless authorized by
a majority of the qualified tax-paying voters
residing therein at an election to be held for
such purpose as hereinafter provided."

Following sections provide ingreater detail for
the levy, collection and use of the tax, and the duties and
authority conferred upon various officers "in all such coun-
ties," or "of any county subject to the provisions of this Act."

It is clear that the Act is designed as a general
law by classification and not as a special act, for if this
were not true, the Act would be unconstitutional and could
not serve as an authorization for any purpose. Article III
Section 56, Constitution of Texas; Brownfield v. Tongate,
(T. C. A. 1937) 109 S. W. (2d) 352; City of Fort Worth v.
Bobbitt (Com. App. 1931), 36 S. W. '2d) 470; Bexar County
v. Tynan, (T. C. A. 1934) 69 S. W . (2d) 193; Watson v. Sabine
Royalty Corporation, (T. C. A. 1938) 120 S. W. (2d) 938. In
order to have the semblance of a general act the last pre-
ceding Federal Census must necessarily be construed to refer
to any subsequent Federal Census and not-limited to the
1930 Census or the census in effect when the Act was passed.
Authorities supra. Aside from this consideration, this
construction would seem to be the plain meaning of the lan-
guage employed. See also Article 23, Section 8, R. C. S.
1925, which reads as follows:

"The following meaning shall be given to each
of the following words, unless a different mean-
ing is apparent from the context:

". . .

"88. 'Preceding Federal Census' shall be
construed to mean the United States Census of
date preceding the action in question and each
subsequent census as it occurs."

The courts in giving this construction to the
phrase and in passing upon the constitutionality of sim-
ilar acts have consistently pointed out the necessity of
so drawing the classification that others may become sub-
ject to the act when they acquire the same characteristics
or qualifications upon which the classification is based.
It would seem that the converse would necessarily follow,
and if those who were once subject to the act should no
longer possess the elements of the classification they they
are no longer subject to the terms of the act.

In Bexar County v. Tynan, supra, the court said:

"The act does provide that it is to apply
only to counties having more than 290,000 and
less than 310,000 inhabitants, according to the
last preceding federal census. The last pre-
ceding federal census is the census of 1930.
Reference to this census discloses that Bexar
County is the only county which falls within
this class. Therefore Bexar County is the only

county affected by the bill, <u>at least until another census is taken, which will be in 1940.</u>"

In Watson v. Sabine Royalty Corporation, (C.C.A. 1938, writ refused) 120 S. W. (2d) 938, the court had before it for consideration Article 2744e, Vernon's Texas Civil Statutes, which is practically identical in its language with S. B. No. 442, except that the population bracket and valuation is different. The court stated.

"Argument is advanced that the use of the language 'all counties . . . containing a valuation of Seventy-five Million Dollars ($75,000,000.00) or more, <u>are hereby created</u>' then and there creates such counties which at the time the bill was enacted had the $75,000,000. valuation, and which also had the required population according to the preceding census. If this construction is placed upon the Act, then such would constitute it a local or special law. And if such, the Act would be unconstitutional because the requirements of Sec. 57, Art. 3, Constitution, were not complied with in its enactment." (Underscoring ours)

The court refused to give this construction and it is apparent that the same language in S. B. No. 442 cannot be given the effect of establishing a county equalization district in Gaines County, which had the requisite population and valuation when the Act was passed, without any reference to subsequent changes in population or valuation.

In Smith v. State, (Tex. Cr. App. 1932) 49 S. W. (2d) 739, the court had the following to say with reference to a population bracket classification according to the "latest United States census."

"At the time of the enactment of the statute last mentioned, the latest United States census, which was that of 1920, gave McLennan County a population of 82,921. It was the only county in the state affected by the provisions of Senate Bill 105, ch. 29. The census of 1930 disclosed that McLennan County had a population of 98,682. <u>Hence the county, by virtue of the increased population, had passed beyond the operation of Senate Bill 105, ch. 29, . . .</u>

". . .

". . . Again, the effort of the Legislature, by amending Chapter 29, Acts of the Forty-first Legislature, First Called Session, <u>after the census of 1930 disclosed that McLennan County had by virtue of increased population passed beyond its operation,</u> to hold McLennan County within the purview of the act, manifests, under the decisions, a purpose, by a pretended classification, to

evade the constitutional inhibition, and, under
the guise of such classification, to enact a
law designed for McLennan County alone."

It is our opinion that when the population of
Gaines County exceeded the maximum population provided in
S. B. No. 442, Acts Forty-sixth Legislature, according
to the 1940 Federal Census, it thereby was excluded from
the classification therein provided and passed from under
the provisions of the Act and has lost any authority it
might have theretofore had by virtue of the provisions
of said Act.

This opinion is not to be construed as an opin-
ion upon the constitutionality of S. B. No. 442, Acts
Forty-sixth Legislature, Regular Session.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By /s/ Cecil C. Cammack
        Cecil C. Cammack
                Assistant

CCC:LM:jrb

APPROVED FEB. 12, 1941
/s/ Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

APPROVED OPINION COMMITTEE
        BY BWB, Chairman